IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **BABY DOE, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 1:16-cv-373** |
| **CHRISTOPHER M. PIEHOTA, et al.,** | ) | |
| **Defendants.** | ) | |

**UNITED STATES' STATEMENT OF INTEREST CONCERNING PLAINTIFFS' MOTION FOR LEAVE TO EXTEND TIME FOR SERVICE AND TO CONDUCT THIRD PARTY LIMITED DISCOVERY**

## INTRODUCTION

The United States submits this Statement of Interest in connection with Plaintiffs' Motion for Leave to Extend Time for Service and to Conduct Third Party Limited Discovery, ECF No. 8 ("Pls.' Mot."). The United States is not a party to this action, but has a direct interest in the Plaintiffs' motion because U.S. agencies are the targets of Plaintiffs' intended discovery requests. This memorandum is submitted pursuant to 28 U.S.C. § 517, which authorizes any officer of the Department of Justice "to attend to the interests of the United States" in any action pending in any state or federal court.[1]

[1] As such, this Statement of Interest is not brought on behalf of the individual defendants, who expect to file a separate dispositive motion raising all of their personal defenses. Furthermore, as noted in the Plaintiffs' motion, Plaintiffs' counsel conferred with James Whitman, Senior Trial Attorney with the Department of Justice, Civil Division, Torts Branch, regarding the relief requested in the Plaintiffs' motion. Pls.' Mot. at 2. Mr. Whitman made it clear to Plaintiffs' counsel, however, that while he has been authorized to represent fourteen of the fifteen named individual-capacity defendants (all except Anne Veysey, who as far as the United States is aware, has not been served, as discussed below), he has not been assigned to represent the United States, which is not a party-

Plaintiffs seek third-party discovery from the United States to identify certain John Doe defendants. This discovery is sought prematurely, before the Court has even entered a scheduling order. And regardless of when such discovery is sought, it would be plainly futile. Judge Trenga squarely ruled in a nearly identical claim by one of these same Plaintiffs that personal capacity claims against individual employees (who have duties with respect to the Terrorist Screening Database) should be dismissed on qualified immunity grounds and because a *Bivens* cause of action may not be available in this context. Plaintiffs' fishing expedition to discover names of anyone involved in watchlisting across several agencies is not an appropriate basis for discovery in a plainly meritless action. That is especially true where, as here, the discovery is likely to implicate sensitive, statutorily-protected, or privileged information.

Plaintiffs further seek an extension of time in which to locate Defendant Anne Veysey and to complete service of process as to Ms. Veysey and the unidentified Defendants. That requested relief also would be inappropriate where the underlying claims are meritless on their face.

## BACKGROUND

Multiple federal agencies – including the Federal Bureau of Investigation ("FBI") – have responsibility for securing the nation from terrorist attacks, and accordingly share information regarding the identities of known or suspected terrorists. As relevant here, the FBI investigates and analyzes intelligence relating to both domestic and international

---

defendant in this matter. Moreover, the Plaintiffs seek discovery that they acknowledge is not in the hands of the named individual-capacity defendants but instead must be directed to the United States as a third party. In light of this, Mr. Whitman advised Plaintiffs' counsel that the United States could take no position on the Plaintiffs' request to seek discovery unless and until the Plaintiffs actually filed their motion. Now that they have, the United States sets forth its interests and position herein.

terrorist activities, *see* 28 U.S.C. § 533, 28 C.F.R. § 0.85(l), and administers the Terrorist Screening Center ("TSC").[2]

The Terrorist Screening Database ("TSDB") is a consolidated database containing identifying information of persons about whom there is reasonable suspicion that they are known or suspected terrorists. *See* Compl. ¶ 57 (ECF No. 1); *see also* Terrorist Screening Center, About, available at https://www.fbi.gov/about/leadership-and-structure/national-security-branch/tsc. The No Fly List and Selectee List are subsets of the TSDB,[3] and the Transportation Security Administration ("TSA") is responsible for implementing those lists. Pursuant to statutory authority, TSA also established and administers the Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP"), which allows individuals to seek redress for alleged difficulties that they experienced during travel screening at transportation hubs or at U.S. borders. Individuals

---

[2] TSC, established by Executive Order in 2003, is a multi-agency Executive organization created to "consolidate the Government's approach to terrorism screening and provide for the appropriate and lawful use of Terrorist Information in screening processes." Homeland Security Presidential Directive 6, 2003 WL 22302258 (Sept. 16, 2003).

[3] Individuals on the No Fly List are denied boarding, and individuals on the Selectee List may enter the sterile area of an airport or board an aircraft only after undergoing enhanced security screening. *See* 49 C.F.R. §§ 1560.105(b)(2), (b)(7)(iii). Inclusion on such a list is not the only reason, of course, why an individual may undergo enhanced screening. *See generally City of Indianapolis v. Edmond*, 531 U.S. 32, 47–48 (2000) (noting that the need for searches and other "such measures to ensure public safety can be particularly acute" at airports); *Scherfen v. DHS*, No. 3:cv-08-1554, 2010 WL 456784, at *7 (M.D. Pa. Feb. 2, 2010) (noting, "heightened screening at airports and border crossing points does not necessarily signify inclusion" on a watchlist, as "travelers may be pulled out of line, searched, and questioned for a variety of reasons, unrelated to watch lists"); *Green v. Transp. Sec. Admin.*, 351 F. Supp. 2d 1119, 1130 (W.D. Wash. 2005) (holding in the context of a challenge to enhanced security screening that "Plaintiffs do not have a right to travel without any impediments whatsoever"); 73 Fed. Reg. 64,018, 64025 (Oct. 8, 2008) ("standard passenger and baggage screening . . . may include additional, random screening"); *id*. at 64026 ("[Passengers who are not on the Selectee List] will not always avoid enhanced screening.").

may request the correction of any erroneous information if they allege, *inter alia*, that they have been unfairly or incorrectly delayed or prohibited from boarding an aircraft as a result of TSA's watchlist matching program. 49 U.S.C. §§ 44903(j)(2)(C)(iii)(I), 44903(j)(2)(G)(i), 44926(a); 49 C.F.R. §§ 1560.201, 205.

The National Counterterrorism Center ("NCTC") maintains substantive intelligence information related to international terrorists and international terror groups in its Terrorist Identities Datamart Environment ("TIDE"). Substantive information regarding purely domestic terrorists is generally maintained by FBI. NCTC has a role in processing and reviewing nominations of international terrorists for inclusion in the TSDB and/or its subsets. *See generally* Testimony of Christopher Piehota, TSC, Sept. 18, 2014, https://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/2015/06/01/09-18-14_fbi_piehota_testimony_re_safeguarding_privacy_and_civil_liberties_while_keeping_our_skies_safe.pdf; Terrorist Identities Datamart Environment Fact Sheet, June 30, 2016, available at https://www.nctc.gov/ docs/tide_fact_sheet.pdf.

In the present action, eighteen plaintiffs (four of whom are attempting to proceed pseudonymously without leave of the Court) purport to bring a class action for damages against various government officials in their individual capacities related to the alleged placement of Plaintiffs on government "watch lists." *See* Compl. (ECF No. 1). Each plaintiff claims to have reason to believe that he or she has at some time been placed on some federal "watchlist," with most of them speculating that watchlist status is the basis for their screening at airports or border crossings. Some but not all of these Plaintiffs allege they have applied for administrative redress through DHS TRIP.

In addition to naming certain government officials with alleged responsibility for watchlisting, who are sued in their individual capacity, the Complaint names three categories of "unidentified" defendants, who are also sued in their individual capacities. The "Unidentified FBI agents" include "agents involved in the nominations that resulted in the placement of Plaintiffs and other similarly situated American citizens on the federal watch list." *See* Compl. ¶ 50. The "Unidentified [Terrorist Screening Center] agents" include "agents involved in acceptance of the nominations to the federal watch list and the dissemination of the stigmatizing label attached to Plaintiffs and other similarly situated American citizens of 'known or suspected terrorists' to state and local authorities, foreign governments, corporations, private contractors, gun sellers, the captains of sea-faring vessels, among other official and private entities and individuals." *See id*. ¶ 51. Finally, the "Unidentified [National Counterterrorism Center] agents" are described as "agents involved in the nominations that resulted in the placement of Plaintiffs and other similarly situated American citizens on the federal watch list." *Id*. ¶ 52. The Complaint purports to make claims against all of these individual capacity defendants, including the "unidentified" defendants, based on alleged violations of procedural due process, substantive due process, the Administrative Procedure Act, and the non-delegation doctrine.

Because many of the Plaintiffs listed in the Complaint in this case have other pending or recent lawsuits on similar subject matters, the Court should also be aware of the status of their other pending claims. Plaintiff Gulet Mohamed brought a lawsuit before this Court in 2010, and the various iterations of the complaint have attempted to state official and individual-capacity claims against similar defendants based on similar

allegations. *See Mohamed v. Holder*, No. 11-cv-50 (E.D. Va). As to the official capacity claims, Judge Trenga granted in part and denied in part Mr. Mohamed's motion for summary judgment on his procedural due process claims, *see Mohamed*, Cv. No. 11-cv-50, 2015 WL 4394958, at *2 (E.D. Va. July 16, 2015), and cross-motions for summary judgment on his substantive claims are currently pending. In his own lawsuit, Mr. Mohamed twice sought discovery to identify certain John Doe defendants. The unidentified defendants first were dismissed after plaintiff failed to serve discovery in a timely manner. *See* Order, *Mohamed*, No. 11-cv-50 (E.D. Va. March 2, 2012), ECF No. 44. In response to the second attempt at discovery, the Court denied the motion for limited discovery, finding, *inter alia*, that such discovery was plainly futile and that such *Bivens* claims would be barred by qualified immunity. *See* Order, *Mohamed*, 11-cv-50, 2015 WL 11121994 (E.D. Va. December 18, 2015), ECF No. 204 ("*Mohamed* Discovery Order").[4]

In August 2014, Plaintiff Yasseen Kadura originally filed a complaint in the Eastern District of Michigan, making allegations regarding his alleged placement on the No Fly List. *See Kadura v. Holder*, 14-cv-13128 (E.D. Mich.). The parties stipulated to dismissal without prejudice in November 2015. *See* Dismissal Order, 14-cv-13128 (E.D. Mich. November 13, 2015), ECF No. 28. Mr. Kadura's claims in the present Complaint appear to relate to alleged delays in boarding. *See* Compl. ¶¶ 130-55.

At least ten of the present plaintiffs (Anas Elhady, Osama Hussein Ahmed, Ahmed Ibrahim Al Halabi, Michael Edmund Coleman, Wael Hakmeh, Murat Frljuckic,

[4] Mr. Mohamed never submitted a request for redress through DHS TRIP, despite representing to the Court his intention to do so in response to a Court order. *See* Plaintiff's Notice, *Mohamed*, 11-cv-50 (E.D. Va. Jan. 5, 2016), ECF No. 207.

Adnan Khalil Shaout, Saleem Ali, Shahir Anwar, and Samir Anwar) have also filed suit against various Government officials in their official capacities in this district at the same time this Complaint was filed. *See Elhady v. Piehota*, No. 16-cv-375 (E.D. Va.). The *Elhady* Complaint was only recently served on the U.S. Attorney's Office.[5]

## ARGUMENT

### I. DISCOVERY TO IDENTIFY JOHN DOE DEFENDANTS IS NOT WARRANTED.

Although the use of "John Doe" defendants is generally disfavored in federal courts, *see* 7 Fed. Prac. & Proc. Civ. § 1659 (3d ed.), "courts have allowed actions to proceed against real, but unidentified defendants" in situations where the John Doe defendants serve as placeholders until "the true identity of an unnamed party can be discovered through discovery or through intervention by the court," *Schiff v. Kennedy*, 691 F.2d 196, 197–98 (4th Cir. 1982). Plaintiffs' motion here, however, prematurely seeks unnecessary and improper discovery.

#### A. Discovery Would Be Futile Because Plaintiffs' Claims Are Meritless.

Plaintiffs acknowledge that they should not be given an opportunity through discovery to identify the unknown defendants if the complaint would be dismissed on other grounds. *See* Pls.' Mot. at 9-10 (citing *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013)); *see also Mann v. Brenner*, 375 Fed. App'x 232, 239 (3d Cir. 2010) (affirming order staying discovery pending resolution of motion to dismiss, which, if granted, would have made discovery "futile"); *see also In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005) (courts regularly deny discovery requests that

[5] It is not clear whether the Plaintiffs proceeding under pseudonyms have other litigation, although it appears that at least John Does 1, 2 and 3 are likely to be identifiable with John Doe plaintiffs in *Elhady*.

"appear to be a thinly veiled attempt to circumvent the normal litigation process."). Discovery to identify John Doe defendants may be denied where the claims would not survive a motion to dismiss. *See Frost v. Young*, No. 2:12-cv-1985, 2012 WL 6043031, at *7 (W.D. La. Dec. 3, 2012) (finding limited discovery to identify John Doe defendants in *Bivens* action inappropriate where claims could not survive motion to dismiss).

Here, it should be apparent that Plaintiffs' claims will not survive a threshold dispositive motion. As Judge Trenga held in nearly identical circumstances in *Mohamed*, plaintiffs' motion to conduct third party limited discovery should be denied as futile. The plaintiff in *Mohamed*—one of the same plaintiffs in this case, represented by the same attorney—filed a similar "Motion to Conduct Limited Discovery" against the United States and its agencies to identify and serve various unknown TSC and TSA agents that he wished to hold personally liable under *Bivens* based on factual allegations and legal claims that largely track those in this case. *See* "*Mohamed* Discovery Order, at 1. As here, Mohamed claimed in his other lawsuit that the unknown agents were "the individuals that placed Plaintiff on the No Fly List and deprived him of due process. Specifically, Defendants Unknown TSC Agents are the person or persons who executed the paperwork, keystrokes, or other approval mechanism that placed Mohamed on the No Fly List, who reviewed the derogatory information and/or TSDB nomination regarding Mohamed and concluded that he qualified for No Fly List placement, who possessed agency authority over TSC's redress unit, and who possessed agency authority to determine the DHS TRIP I-complaint review process that TSC's redress unit would undertake." *Id*. at 5 (quoting Pl.'s Proposed Fifth Am. Compl. ¶ 13, *Mohamed v. Holder*,

No. 11-50 (E.D. Va. Aug. 13, 2015), ECF No. 195-1 ("*Mohamed* Proposed Fifth Am. Compl.")).

Judge Trenga denied Mohamed's motion for several reasons. The "most dispositive" of those reasons was that "plaintiff's request for additional discovery is inconsistent with the settled law of qualified immunity which shields government officials from civil liability when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mohamed* Discovery Order at 4 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal citations omitted). Judge Trenga explained:

> [T]hese federal agents were essentially acting within the scope of their authority and assigned duties with respect to both the [TSDB] and the No Fly List. *Moreover, the history of these proceedings demonstrate the difficult and unsettled nature of the constitutional issues embedded in plaintiff's claims, all within a national security context where the judiciary has been especially cautious in allowing similar damages claims to proceed*. *See* [Doc. No. 189 at 1-2] ("This litigation ... presents unsettled issues that are complicated in their resolution by the criteria used to compile the No Fly List and the classified information that, of necessity, is used to determine whether a person satisfies that criteria.").

*Mohamed* Discovery Order at 5 (emphasis added). As a result, Judge Trenga held that Mohamed's proposed discovery to learn the identities of the unknown agents "relate[d] to a damages claim that is futile," and denied the discovery motion on that basis. *Id*. The Court should do the same here.

First, the Plaintiffs' request to learn the identities of the unknown defendants in this case is nearly identical to Mohamed's request to do that in his own pending case. According to the Plaintiffs' motion (and their complaint), the unknown agents were "involved in the nominations that resulted in the placement of Plaintiffs . . . on the federal watch list" and were "involved in acceptance of the nominations to the federal watch list

and the dissemination of the stigmatizing label attached to Plaintiffs." Pls.' Mot. at 8 (quoting Compl. ¶¶ 50-52). Furthermore, Counts I and II of the Plaintiffs' complaint raise the same sort of procedural and substantive due process challenges to the No Fly List that Mohamed wished to pursue against the unknown defendants in Counts I and III of his proposed Fifth Amended Complaint in his previous (but still pending) suit. *Compare* Compl. ¶¶ 384-405 *with Mohamed* Proposed Fifth Am. Compl. ¶¶ 56-64, 68-70.

Second, the Plaintiffs' *Bivens* claims against these unknown defendants are futile for the same reason that their *Bivens* claims against the named defendants are futile because *all* of the defendants (named or unnamed) are entitled to qualified immunity. To defeat qualified immunity at the motion to dismiss stage, a Plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *id.* at 2080 (internal citations omitted). With respect to the second prong, the contours of the right must be "sufficiently definite," so "that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). Under this "exacting standard," *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015), "existing precedent must have placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). In contrast, "in gray areas, where the law is unsettled or murky, qualified immunity affords protection to an officer who takes an action that is not clearly forbidden—even if the action is later deemed wrongful. The deference given to the judgments of law enforcement officers acting in good faith is particularly important in

cases involving law enforcement officials investigating serious crimes." *Rogers v. Pendleton*, 249 F.3d 279, 286 (4th Cir. 2001) (internal citation omitted); *see also al-Kidd*, 131 S. Ct. at 2085 (explaining that the qualified immunity doctrine is designed to "give[] government officials breathing room to make reasonable but mistaken judgments").

As the named defendants will demonstrate in the dispositive motion that they intend to file in this case, Plaintiffs' procedural and substantive due process claims in Counts I and II of their complaint do not allege a clearly established constitutional violation. Rather, as Judge Trenga explained, "the constitutional issues embedded in [those] claims" involve the very same "difficult and unsettled" questions of law concerning the creation and implementation of the No Fly and Selectee Lists as the procedural and substantive due process claims in Counts I and III of Mohamed's proposed Fifth Amended Complaint in *Mohamed v. Holder*. *Mohamed* Discovery Order at 5. Given the "unsettled" and "murky" state of the law in this area—as a judge of this Court already has found—all of the defendants are entitled to qualified immunity. *Rogers*, 249 F.3d at 286; *cf. Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy."). Plaintiffs' discovery motion therefore should be denied because "it is clear that" this portion of "the complaint would be dismissed on" qualified immunity grounds. *Gillespie*, 629 F.2d at 642, *quoted in* Pls.' Mot. at 9.

That is not the only reason why Counts I and II clearly should be dismissed. As Judge Trenga noted in *Mohamed*, "[t]here is also a substantial issue concerning whether a *Bivens*-type remedy could or should provide relief for the alleged violations." *Mohamed*

Discovery Order at 5 n.5. A "freestanding damages remedy for a claimed constitutional violation," the Supreme Court has said, "is not an automatic entitlement." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). To the contrary, "implied causes of action are disfavored." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). That is particularly true in a case, like this one, occurring "within a national security context where the judiciary has been especially cautious in allowing similar damages claims to proceed." *Mohamed* Discovery Order at 5 & nn.4-5 (citing *Lebron v. Rumsfeld*, 670 F.3d 540, 552 (4th Cir. 2012), as "refusing to recognize a *Bivens* remedy for an American citizen detained by the U.S. military as an enemy combatant and allegedly tortured for three years, noting '[t]he fact that Padilla disagrees with policies allegedly formulated or actions allegedly taken does not entitle him to demand the blunt deterrent of money damages under *Bivens* to promote a different outcome'"); *accord Vance v. Rumsfeld*, 701 F.3d 193 (7th Cir. 2012) (*en banc*); *Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) (*en banc*); *Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012) ("The Supreme Court has never implied a *Bivens* remedy in a case involving the military, national security, or intelligence.").

In addition, and as another court already has held in the specific context of the No Fly List, "[t]he existence of a system of administrative and judicial remedies for individuals who have been improperly included on the No Fly List"—namely, the DHS TRIP program—"is sufficient to conclude that *Bivens* should not be extended to this context." *Tanvir v. Lynch*, 128 F. Supp. 3d 756, 772 (S.D.N.Y. 2015). Moreover, as the Supreme Court has said, Congress' chosen administrative system need not "'provide complete relief,'" such as "compensatory or punitive damages from the Government or the Agents," and Congress may not even "have had constitutional violations of the sort

alleged here—as opposed to administrative errors—in mind when crafting the administrative and judicial review scheme it did." *Id*. at 773 (citing *Bush v. Lucas*, 462 U.S. 367, 388 (1983)). All that matters is "Congress has crafted a remedial scheme for individuals to challenge their inclusion on the No Fly List and to judicially appeal an adverse determination." *Id*. at 772.[6] Plaintiffs' request to learn the identities of additional *Bivens* defendants is therefore futile and should be denied for the additional reason that a *Bivens* remedy is not available in the context of this case.

Plaintiffs' attempt to sue the defendants solely in their individual capacity and solely for money damages under the Administrative Procedure Act ("APA") and the non-delegation doctrine, Compl. ¶¶ 406-17 (Counts III and IV), has even less merit. By its own terms, the APA permits an action "seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an *official capacity* or under color of legal authority." 5 U.S.C. § 702 (emphasis added); *see, e.g.*, *Duhring Res. Co. v. U.S. Forest Serv.*, No. 07-314, 2009 WL 586429, at *6 (W.D. Pa. Mar. 6, 2009) ("The APA does not provide for individual-capacity claims, or money damages."). As for Plaintiffs' non-delegation claim, whatever merit such a claim might have against the United States (which is almost certainly none, *see, e.g., Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474-75 (2001) (collecting cases)), there is absolutely no authority for bringing such a claim against federal employees in their *personal* capacity. Indeed, Plaintiffs themselves frame this claim in terms of *Congress* not providing "the *Executive Branch* with intelligible principles from which *the Executive* can implement its watch list schemes." Compl. ¶¶ 413 (emphasis added). Counts III and IV therefore are,

[6] Although this ruling is specifically about the No Fly List, DHS TRIP is available to any person who experiences delayed or denied boarding on aircraft.

like Counts I and II, legally unsustainable and do not remotely support seeking discovery of alleged John Doe defendants. In sum, because it is clear that *all* of Plaintiffs' claims fail to state a cause of action against *any* individual-capacity defendant and should be dismissed for the reasons outlined above, Plaintiffs' motion for third-party discovery to identify more individual-capacity defendants is futile and should be denied.[7]

**B. The Proposed Discovery Is An Inappropriate Fishing Expedition for Hypothetical Wrongdoing.**

A court may allow a claim to proceed with a John Doe defendant as a placeholder "only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." *Chidi Njoku v. Unknown Special Unit Staff*, 217 F.3d 840 (4th Cir. 2000) (*per curiam*). The designation is not appropriate where the John Doe defendant is used as a "catch-all provision, designed to encompass any individual with a potential connection to the harms suffered." *Farmer v. Wilson,* No. 2:14-CV-13256, 2014 WL 4629591, at *2 (S.D.W. Va. Sept. 15, 2014); *see also Iqbal,* 556 U.S. at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff's designation of "unknown" defendants here is precisely such an impermissible catch-all. This is not a case where the proposed discovery would help

---

[7] To be clear, the reasons we have outlined in this brief are not the only reasons that Plaintiffs' claims against the individual-capacity defendants are without merit and should be dismissed. They are, however, some of the key reasons that apply universally, no matter who the particular plaintiff or defendant may be. Among other reasons for dismissing particular plaintiffs or particular defendants are the two-year statute of limitations that applies in Virginia for bringing *Bivens* claims, and Plaintiffs' failure to sufficiently allege the personal involvement of the named defendants. *See generally* Va. Code Ann. § 8.01-243(A); *Sakwa v. Aronica*, No. 92-2069, 1993 WL 165297, *1 (4th Cir. May 18, 1993) (unpublished); *Iqbal*, 556 U.S. at 680-87.

Plaintiffs ascertain the identity of a "real, but unidentified" individual believed to have committed a wrong. *See Schiff*, 691 F.2d at197. Rather, Plaintiffs have described broad categories of people who may or may not bear some relationship to the alleged harm. Each category of unidentified individuals is described as employees "involved in" Plaintiffs' alleged placement on some federal watchlist, without identifying any specific acts or wrongdoing. *See* Compl. ¶¶ 50-52. This is a mere fishing expedition to attempt to identify people who may or may not have committed some wrong in some way related to Plaintiffs' claims. *Cf. AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014) ("The identity of prospective defendants who cannot properly be sued in this district can be of little use in a lawsuit brought in this district."). For this reason as well, the requested discovery is inappropriate and should be denied.

**C. Discovery to Identify John Does Is Also Premature.**

At the very least, the expedited discovery sought by Plaintiffs is unwarranted, and in any event should not commence until the individual defendants' anticipated dispositive motion is resolved.

Under the Federal Rules of Civil Procedure, a "party may not seek discovery from *any source* before the parties have conferred as required by Rule 26(f) except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1) (emphasis added). Courts grant expedited discovery only upon a showing of at least good cause. *See Dimension Data N. Am., Inc. v. NetStar–1, Inc.*, 226 F.R.D. 528, 531–32 (E.D.N.C. 2005) (denying motion for expedited discovery where plaintiff failed to demonstrate good cause). A court in this district has held that "all requests for expedited discovery

should be governed by the same standard" and that "immediate discovery should be granted when some unusual circumstances or conditions exist that would likely prejudice the party if he were required to wait the normal time." *See ForceX, Inc. v. Tech. Fusion, LLC*, No. 4:11-cv-88, 2011 WL 2560110, at *3 (E.D. Va. June 27, 2011) (Miller, M.J.).[8] Expedited discovery has been denied when it is sought simply to identify John Does, the identification of whom could occur during the normal discovery period if appropriate. *Carter v. Ozoeneh*, No. CIV 3:08CV614, 2009 WL 1383307, at *3 (W.D.N.C. May 14, 2009).

Here, no defendant has appeared, the Court has not yet entered a scheduling order, and discovery from any source would be premature under Rule 26(d). Plaintiffs have made no showing that departure from the ordinary course is warranted or that normal discovery procedures would prejudice their claims. On the contrary, premature discovery is plainly unwarranted where, as here, Plaintiffs' claims should be dismissed and where discovery unnecessarily imposes burdens on nonparties and involves sensitive or privileged information.

---

[8] Other courts have imposed a higher standard for expedited discovery, requiring a showing under the preliminary injunction factors to obtain discovery: (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between expediting discovery and avoiding irreparable injury; and (4) some evidence that the injury that would result without expedited discovery is greater than the injury that the defendant would suffer if discovery were expedited. *See ForceX, Inc.*, 2011 WL 2560110, at *4 (describing "murky" state of case law); *Physicians Interactive v. Lathian Sys., Inc.*, No. CA 03-1193-A, 2003 WL 23018270, at *4 (E.D. Va. Dec. 5, 2003) (applying modified version of preliminary injunction factors in deciding motion for expedited discovery); *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 142 (D.D.C. 2005) (collecting cases applying preliminary injunction standard). Although the Fourth Circuit has not resolved the issue of the applicable standard, the Plaintiffs here cannot satisfy the more relaxed standard articulated in *ForceX* and thus this Court need not resolve the applicable standard.

Even if the Court believed that third party discovery may be warranted at some stage, several factors counsel in favor of delaying any such discovery. *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (district courts have broad discretion to manage discovery).

First, to conserve the resources of the parties and the Court, the anticipated discovery should be put off at least until the anticipated dispositive motion by the named individual defendants is resolved. This is especially so where a previous ruling in this district suggests that Plaintiffs' claims are highly unlikely to survive.

Delaying discovery until after a dispositive motion is heard also makes sense where the anticipated discovery implicates sensitive or privileged information. Plaintiffs' complaint is unclear as to what watchlists they allege they are on. In general, TSA relies upon, *inter alia*, the No Fly List and the Selectee List—subsets of the TSDB —to screen passengers attempting to fly on United States commercial aircraft, or any commercial flight to, from, or over the United States. But the Government cannot respond to discovery requests regarding who, if anyone, was involved in placing an individual on the Selectee or No Fly List without revealing the watchlist status of the individual. And as a general matter, the Government does not disclose the status of any individual with respect to the TSDB, the Selectee List or the No Fly List. Watchlist status is protected by the law enforcement privilege, and the No Fly List and Selectee List are statutorily protected as Sensitive Security Information (SSI). *See, e.g.*, *Blitz v. Napolitano*, 700 F.3d 733, 737 n.5 (4th Cir. 2012) ("The pertinent regulations deem the following to be sensitive security information that may not be publicly released: . . . the identities of individuals on no-fly and selectee lists[.]"); *Scherfen*, 2010 WL 456784, at *8 n.5 ("Because the TSDB status

of Plaintiffs can neither be confirmed nor denied, this Court cannot discuss . . . the contents of [documents revealing Plaintiffs' status] submitted for *in camera* review[.]"); *see also* 49 C.F.R. § 1520.5(b)(9)(ii) (SSI includes "information and sources of information used by a passenger or property screening program or system, including an automated screening system").[9] While the Government could and would assert these protections in response to a proper third party discovery request, there is no need for the parties and the Court to resolve such issues now, when Plaintiffs' claims should clearly be dismissed on the merits.[10] *See also Iqbal*, 556 U.S. at 685-86 (stating that discovery and other pretrial proceedings may not proceed for other defendants until *Bivens* defendants' right to qualified immunity is resolved).

Also, the motion for discovery may be denied as premature where, as here, Plaintiffs have not attempted to comply with each agency's so-called "Touhy regulations." *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Among other things, these regulations set forth the proper procedures for requesting testimony or the production of documents from various agencies, in connection with litigation where the agency or the government is not a party, and describe the process of how each agency

[9] The revised DHS TRIP process permits certain U.S. persons who have been denied boarding on flights to learn whether or not they are on the No Fly List. *See Mohamed v. Holder*, No. 1:11-CV-50 AJT/MSN, 2015 WL 4394958, at *13 (E.D. Va. July 16, 2015) ("Under the newly revised procedures, individuals who are denied boarding and apply for redress through DHS TRIP will now receive a letter stating whether or not a person is listed on the No Fly List, with the option to receive and/or submit additional information.").

[10] To the extent that Plaintiffs' discovery request were to implicate information in TIDE, such a request may risk or require the disclosure of classified national security information, which would be subject to additional protections from disclosure. TIDE is a classified database where all information is sourced back to specific intelligence or law enforcement reports, whether from an intelligence law enforcement entity. *See* TIDE Fact Sheet, available at https://www.nctc.gov/docs/tide_fact_sheet.pdf.

reviews and responds to such a request. *See* 28 C.F.R. § 16.21 (DOJ regulations that govern FBI and TSC employees); 32 C.F.R. § 1703 (ODNI regulations that govern NCTC employees). Agency decisions under such regulations are then subject to review under the Administrative Procedures Act. *See, e.g., COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999); *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 745 (D. Md. 2008). Any discovery requests by Plaintiffs in this matter are subject to the agency's application of the Touhy regulations. The Court should not permit a party to circumvent that process through motions practice in this case, particularly where the underlying claim has yet to be tested on a dispositive motion.

## II. Plaintiffs' Motion for an Extension of Time to Serve John Doe Defendants Lacks Merit.

Plaintiffs also request "an extension of time to serve the Unidentified FBI, TSC and NCTC Agents sufficient to uncover the identities and locations of the Unidentified Defendants and effectuate proper service upon them." Pls.' Mot. at 11. But because the Plaintiffs' motion for discovery to learn the identities of the unknown defendants lacks merit for all of the reasons outlined above, their motion for an extension of time to serve the unknown defendants likewise lacks merit.

In any event, this aspect of Plaintiffs' motion is unnecessary. If at some point the Court permits Plaintiffs to amend their complaint to add newly-named individual-capacity defendants, Plaintiffs will then have 90 days from the date that they file their amended complaint to complete personal service on those new defendants. *See, e.g.*, Charles Alan Wright & Arthur R. Miller, 4B *Federal Practice & Procedure*, § 1137 & n.39 (4th ed. 2016) ("However, adding a new party through an amended complaint initiates a new timetable for service upon the added defendant.") (collecting cases).

Plaintiffs' motion to extend the time to serve the unknown defendants therefore should be denied for this reason as well.

## III. Plaintiffs' Motion for an Extension of Time to Serve Anne Veysey is also Meritless.

Finally, Plaintiffs have requested additional time to serve one of the named defendants, Anne Veysey (whose name Plaintiffs have apparently misspelled as Ann Vessey). Pls.' Mot. at 13. Plaintiffs have sued Ms. Veysey for actions she allegedly took as the "former Acting Principal Deputy Director of the Terrorist Screening Center" from July 2013 to October 2013. Compl. ¶ 40. TSC is a multi-agency organization. It appears that Ms. Veysey was an employee of the Department of Homeland Security ("DHS") who was detailed to the TSC for a brief time but who retired in January 2014. At this time, the Department of Justice does not represent Ms. Veysey in her individual capacity and is not authorized to accept personal service for her in this matter.

In light of the status of this case, and for reasons similar to those outlined above regarding John Doe discovery, the Court may consider the following in deciding Plaintiffs' motion to extend the time to serve Ms. Veysey. First, the claims against Ms Veysey fail for the same reasons that the claims against the John Doe defendants fail. Moreover, as noted above, and as is the case with Plaintiffs' claims against many of the individual-capacity defendants, the claims against Ms. Veysey are time-barred on the face of the complaint. Because the statute of limitations for a *Bivens* claim in Virginia is two years, *see Sakwa*, 1993 WL 165297 at *1 (citing Va. Code Ann. § 8.01-243(A)); *see also Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir. 1983), and because Plaintiffs filed this suit on April 5, 2016, Plaintiffs cannot base their claims on conduct that occurred before April 5, 2014. Yet Plaintiffs themselves have specifically alleged that they are

suing Ms. Veysey for actions she supposedly took between July 2013 and October 2013—well before April 5, 2014. Compl. ¶ 40. The Court may consider this issue before extending the time to serve Ms. Veysey. *See, e.g.*, *Hill v. Traxler*, No. 15-cv-137, 2015 WL 11112054, at *2 (E.D. Va. May 11, 2015) (dismissing *Bivens* claims *sua sponte* under 28 U.S.C. § 1915A as untimely, as "expiration of the statute of limitations [was] clear on the face of the complaint").

Finally, Plaintiffs have not requested a specific amount of time to complete service on Ms. Veysey, but instead appear to be seeking an open-ended extension. *See* Pls.' Mot. at 13-14. Should the Court grant this aspect of Plaintiffs' motion, the United States suggests that Plaintiffs receive only a limited amount of additional time to locate Ms. Veysey and complete service on her not to exceed thirty days, after which the claims against her should be dismissed, at a minimum, without prejudice for lack of service. *See* Fed. R. Civ. P. 4(m).

## **CONCLUSION**

For the foregoing reasons, the United States submits that Plaintiffs have not satisfied the grounds for taking limited discovery against the United States in this case or to extend the time for service of John Doe defendants (or for service of Ms. Veysey).

Dated: August 2, 2016

Respectfully submitted,

BENJAMIN C. MIZER
PRINCIPAL DEPUTY ASSISTANT ATTORNEY GENERAL
CIVIL DIVISION

DANA BOENTE
UNITED STATES ATTORNEY

ANTHONY J. COPPOLINO
DEPUTY BRANCH DIRECTOR
FEDERAL PROGRAMS BRANCH

AMY POWELL
TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
20 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D.C. 20001
TELEPHONE: (202) 514-9836
FAX: (202) 616-8460
E-MAIL: amy.powell@usdoj.gov

_/S/_______________________________
R. JOSEPH SHER
ASSISTANT UNITED STATES ATTORNEY
OFFICE OF THE UNITED STATES ATTORNEY
JUSTIN W. WILLIAMS UNITED STATES ATTORNEYS BUILDING
2100 JAMIESON AVE.,
ALEXANDRIA, VA. 22314
TELEPHONE: (703) 299-3747
FAX: (703) 299-3983
E-MAIL JOE.SHER@USDOJ.GOV

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on August 2, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing (NEF) to the following counsel of record:

Gadeir Abbas
The Law Office of Gadeir Abbas
1155 F Street NW, Suite 1050
Washington, D.C. 20004
Telephone: (720) 251-0425
Fax: (720) 251-0425
Email: gadeir.abbas@gmail.com

DATED: AUGUST 2, 2016

/S/
R. JOSEPH SHER
ASSISTANT UNITED STATES ATTORNEY
OFFICE OF THE UNITED STATES ATTORNEY
JUSTIN W. WILLIAMS UNITED STATES ATTORNEYS' BUILDING
2100 JAMIESON AVE.,
ALEXANDRIA, VA. 22314